UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EARL GREATHOUSE,** | : | **No. 3:25-CV-1370** |
| **Plaintiff** | : | |
| | : | **(Caraballo, M.J.)** |
| **v.** | : | |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of** | : | |
| **Social Security,** | : | |
| **Defendant** | : | |

# MEMORANDUM

## I. Introduction

Plaintiff Earl Greathouse seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, respectively. The Court has jurisdiction pursuant to Title 42, United States Code, Section 405(g), and Title 28, United States Code, Section 636(c)(1).

Greathouse raises three primary challenges to Administrative Law Judge ("ALJ") Joseph R. Doyle's determination that Greathouse was not disabled under the Social Security Act. Greathouse contends

that, when assessing his residual functional capacity, the ALJ: (1) wrongfully declined to include the one-to-two step limitation recommended in Dr. Yeater's and Dr. Rohar's respective medical opinions; (2) discounted all opinion evidence regarding Greathouse's mental impairments; and (3) improperly evaluated Greathouse's subjective symptom testimony. Doc. 11 at 1. As explained below, ALJ Doyle's conclusions were supported by substantial evidence in the record, coupled with sufficient reasoning to permit meaningful judicial review. Accordingly, the Court affirms the Commissioner's decision to deny Greathouse's claims for social security disability benefits.

## II. Background[1]

On September 28, 2021, Greathouse filed an application for disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act, alleging disability as of November 15, 2015, due to back pain, joint pain, depression, bipolar disorder, psychotic disorder, autism, obesity, and diabetes mellitus. Tr. 343-349. The Social Security Administration

[1] As the parties and the Court are well-acquainted with the facts underlying this appeal, the Court provides only a brief summary of the procedural history, and addresses the pertinent facts in the discussion below.

("SSA") denied Greathouse's application on December 6, 2021, *id.* at 117, and again upon reconsideration on February 14, 2022. *Id.* at 179. Greathouse accordingly requested and received a hearing on August 1, 2024. *Id.* at 49-75; 195-196; 235-248.

On September 10, 2024, ALJ Doyle issued a decision concluding that Greathouse was not disabled. *Id.* at 14-48. Greathouse appealed to the Social Security Appeals Council on October 22, 2024. *Id.* at 7-13. The Appeals Council denied his request on May 29, 2025. *Id.* at 1-6. The instant appeal followed. Doc. 1. The Commissioner provided the record on September 29, 2025. Doc. 6. The parties then filed their respective briefs, leaving this matter ripe for decision. Docs. 11, 15-16.

## III. <u>Discussion</u>

### A. Standard of Review

Review of the Commissioner's decision denying a claimant's application for social security disability benefits is limited to determining whether the factual findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial in this context is "more than a mere scintilla of evidence

but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted). Put more pointedly, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In an adequately developed record, this can mean "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607, 620 (1966) (citations omitted).

Under this deferential standard, "[f]actual findings which are supported by substantial evidence must be upheld." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) (citations omitted); 42 U.S.C. § 405(g). This Court's role is not to re-weigh the evidence and make factual determinations, but to simply review the record and ensure that the ALJ provided "a discussion of the evidence and an explanation of reasoning for her conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations and quotations omitted). An ALJ meets that standard by

stating "in her decision which evidence she has rejected and which she is relying on as the basis for her finding." *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 433 (3d Cir. 1999) (citations omitted). Moreover, when there is countervailing evidence, an ALJ must "give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted); *see also Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (holding that substantial evidence standard is unmet when the ALJ fails to resolve conflicts created by countervailing evidence).

### B. The ALJ Sufficiently Explained His Reasoning for Declining to Include a One-to-Two Step Limitation.

Greathouse contends that ALJ Doyle erred by not incorporating the one-to-two step limitation proposed by Dr. Yeater and Dr. Rohar in their respective medical opinions. Doc. 11 at 11. The Commissioner responds that the ALJ specifically explained why a limitation to simple work was incorporated in the residual functional capacity, instead of the more restrictive one-to-two step task limitation. Doc. 15 at 13-14.

The ALJ is tasked with assessing a claimant's residual functional capacity. 20 C.F.R. § 404.1546(c). "Residual functional capacity is defined as that which an individual is still able to do despite the

limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). A residual functional capacity reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five of the ALJ's analysis. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184, at *2. Although all evidence of record is considered, the ALJ's determination must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

The ALJ need not adopt every limitation expressed by an expert, as it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and [residual functional capacity] determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Nevertheless, "while the ALJ may choose which medical opinions are persuasive, for each limitation opined necessary by a persuasive medical source, the ALJ is obligated to either: (1) incorporate that limitation in the claimant's [residual functional capacity], or (2) explain the basis for discounting that limitation. Such an obligation ensures that any

omission was intentional and supported by substantial evidence in the record." *Lombardo v. Bisignano*, 2026 WL 674198, at *1 (M.D. Pa. 2026) (citations and quotations omitted).

Here, the ALJ found the opinions by Dr. Yeater and Dr. Rohar proposing the one-to-two step limitations to be unpersuasive. Tr at 38. ALJ Doyle justified that finding by explaining that the medical record was consistent with a different, "simple routine" set of limitations. *Id.* Specifically, the ALJ found:

> [W]hile there have been some observations of impaired memory, attention and concentration, there have also been observations of attentiveness (Exs. 17F and 23F). A consulting examiner, who noted cognitive slowness also noted adequate concentration and largely decent overall cognitive skills (Ex. 2F/4-5). There was also notation of intact reading and spelling skills without evidence of a learning disorder (Ex. 2F/4-5). Another examiner noted slow processing speed but adequate attention and concentration (Ex. 5F). Moreover, the claimant had graduated school without special education assistance (Hearing Testimony). The record also lacks test results reflective of an intellectual impairment. Overall, the evidence is most consistent with ability to perform simple, routine and repetitive tasks in a setting with production quotas based only on end of workday measurements with no assembly line work.

Tr. at 38. That rationale met the ALJ's burden of articulation and permits meaningful judicial review. The "simple routine" limitation included in the residual functioning capacity was thus "credibly

established" by the medical record. *Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d Cir. 2005). As such, the Court will not disturb the ALJ's findings.

**C. The ALJ Adequately Developed the Record.**

Greathouse contends ALJ Doyle created an evidentiary deficit by rejecting all the medical opinions concerning Greathouse's mental impairments.[2] Doc 11 at 13-14. Greathouse posits that if the ALJ did not find any opinion persuasive, he should have ordered a consultative examiner. Doc 11 at 17. The Commissioner responds that an ALJ is permitted to make a residual functional capacity assessment, even absent a corresponding medical opinion. Doc. 15 at 15-16.

As a general matter, the Court agrees with the Commissioner that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214-15 (W.D. Pa. 2015). Indeed, "[s]urveying the medical evidence to craft an RFC is part of the

---

[2] Plaintiff does not challenge the ALJ's findings regarding Greathouse's physical impairments. As such, the Court will only evaluate the ALJ's reasoning that addresses Greathouse's mental impairments.

ALJ's duties." *Cummings*, 129 F. Supp. 3d at 215. And the current state of the law "does not prohibit the ALJ from making an RFC assessment even if no doctor has specifically made the same findings and even if the only medical opinion in the record is to the contrary." *Id.* (quoting *Doty v. Colvin*, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014)).

An ALJ need not rely on expert medical opinions when determining an individual's residual functional capacity, as "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion.").

After reviewing the record, the Court concludes the ALJ adequately explained why he did not find the respective medical opinions persuasive. Tr. at 37-38. As mentioned above, the ALJ found Dr. Yeater's and Dr. Rohar's one-to-two step limitation unsupported by

the medical record. *Id.* at 37. ALJ Doyle also deemed physician assistant McCliment's opinion unpersuasive, because it lacked documentation on Greathouse's hospitalizations and did not demonstrate objective results demonstrating low intellect. *Id.* at 37-38. Finally, ALJ Doyle explained that Dr. Levine's and Dr. Oshodi's opinions did not contain functional limitations expressed in agency-compliant terms. *Id.* at 36-37. All of those analyses met the ALJ's burden of articulation and permit meaningful judicial review.

Greathouse posits that, in light of those rejections, ALJ Doyle should have ordered a consultative examination. Doc. 11 at 8. While the Court recognizes that, in certain circumstances, a consultative examination may be required to properly resolve a disability claim "where the medical record in evidence is inconclusive," *Brown v. Saul*, 2020 WL 6731732, at *10 (M.D. Pa. 2020) (*report and recommendation adopted by* 2020 WL 6729164 (M.D. Pa. 2020)), here, the medical record was sufficiently developed to permit the ALJ to make an informed decision.

First, the record was adequately developed because the medical evidence extended beyond the cited opinions. *See Velazquez v.*

*Bisignano*, 2026 WL 3001373 (M.D. Pa. 2026) (finding an insufficient medical record where every expert who reviewed the case agreed there was insufficient evidence to make an informed disability determination). Indeed, ALJ Doyle analyzed Greathouse's longitudinal medical history, determining that it supported a limitation of following "simple instructions." Tr. at 36. In particular, the ALJ explained that Dr. Richard's 2017-2018 exam findings reflected:

> [Results were] remarkable for cooperative and responsive demeanor, albeit with poor social skills (Ex. 5F/5-6). He was relatively difficult to engage and a poor historian (Ex. 5F/5-6)...However, despite slow speech, it was fluent (Ex. 5F/5-6). Moreover, expressive and receptive language skills were adequate (Ex. 5F/5-6)... Notably, thought processes appeared within normal limits (Ex. 5F/5-6). Memory skills were impaired without further classification but attention and concentration were more precisely classified as mildly impaired (Ex. 5F/5-6). Intellect appeared below average and general fund of knowledge somewhat limited (Ex. 5F/5-6). While insight appeared poor, judgment was fair (Ex. 5F/5-6).

Tr. at. 29. As such, the ALJ agreed with similar exam findings that Greathouse was moderately limited in areas of mental functioning, but found they did not warrant greater limitations than those ultimately included in the residual functioning capacity. Tr. 36-38. Recognizing that "[t]he ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own

inferences," *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986), the Court finds that ALJ Doyle properly assessed Greathouse's residual functional capacity based on the medical record.

Second, ALJ Doyle was under no obligation to order a consultative examination. The ultimate burden of proving disability lies with the claimant. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[I]n general, you have to prove to us that you are ... disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."). While the ALJ has a "duty to develop a full and fair record in social security cases," *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995), this duty does not entail "search[ing] out all relevant evidence which might be available, since that would in effect shift the burden of proof to the government." *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974).

This is especially true when the claimant is represented by counsel. *See Myers v. Berryhill*, 373 F. Supp. 3d 528, 539 (M.D. Pa.

2019). Here, ALJ Doyle "was permitted to presume that [Greathouse] had put forth his best case since he was represented by counsel." *Id.* During the hearing, Greathouse's attorney represented that no other outstanding medical evidence was "relevant to the period." Tr. at 41. Nor did Greathouse's attorney request that a consultative examination be scheduled. *See O'Neill v. Bisignano*, 2025 WL 3469271, at *9 (M.D. Pa. 2025) (holding that the ALJ erred in failing to order a consultative examination where, among other factors, the claimant specifically requested such examination). Greathouse also fails to explain the basis for his present request for an examination, and how it would materially affect the ALJ's decision. Moreover, as the Commissioner correctly observes, Doc. 15 at 17, a consultative examination is discretionary, not mandatory. *See, e.g.*, 20 C.F.R. §§ 404.1520b(b)(2)(iii) ("We *may* ask you to undergo a consultative examination[.]" (emphasis added)), 920b(b)(2)(iii) (same). In sum, because ALJ Doyle thoroughly explained his reasons for finding the medical opinions unpersuasive, an additional consultative examination was unnecessary.

**D. The ALJ Properly Evaluated the Claimant's Symptoms.**

Greathouse also contends that ALJ Doyle improperly assessed several symptom allegations. Specifically, Greathouse protests that the ALJ: (1) did not question Greathouse about the alleged lack of aggressive treatment; (2) did not consider that a patient's behavior during medical treatment may not be the same in a work environment; and (3) did not question Greathouse about inconsistent statements regarding his daily activities during the hearing. Doc. 11 at 17-21. The Commissioner responds that the ALJ's evaluation was supported by substantial evidence because he "found that his largely adequate performance on mental status examination supported an RFC for simple work with limitations on interaction, stress tolerance, and work pace." Doc. 15 at 20.

As a preliminary matter, the Court notes that the evaluation of Greathouse's alleged symptoms falls within the ALJ's regulatory authority and is entitled to due deference. *See Diaz*, 577 F.3d at 506 ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses . . . .").

It is against this backdrop that the Court addresses Greathouse's remaining challenges and holds that, upon extensive review of the record, ALJ Doyle's decision was supported by substantial evidence, and sufficiently articulated to permit meaningful judicial review.

Greathouse's first contention that the ALJ should have questioned him on infrequent treatment misconstrues the record. Greathouse avers that the ALJ drew a negative inference from his lack of hospitalizations. Doc 11 at 18. However, the record shows the ALJ was recounting a lack of evidence supporting a debilitating psychotic disorder, not that Greathouse neglected to pursue treatment:

> Further, despite a psychotic disorder diagnosis, exams have generally lacked evidence of psychotic process or endorsement of hallucinations or delusions. Additionally, despite complaints of impaired attention, largely, the record lacks documented need for frequent redirection during mental health sessions. Moreover, the claimant has frequently admitted good response to psychotropic medication, often stating he is doing well. Further, he has not required psychiatric hospitalization.

Tr. at 31. Accordingly, this first ground holds no weight.

Greathouse's second contention merely invites the Court to reconsider the weight ALJ Doyle placed on Greathouse's receptiveness to psychotropic medication, which the Court may not do. *See Chandler*,

667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). The ALJ considered Greathouse's responsiveness to medication over a period of several years. Tr. at 29-30. ALJ Doyle was entitled to consider medication and Greathouse's response when assessing his symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (considering treatment and medication as a factor in assessing alleged symptoms). Therefore, this complaint provides no basis for remand.

Finally, the ALJ did not err by failing to question Greathouse about his inconsistent statements regarding his daily activities. ALJ Doyle noted that "[o]verall, [Greathouse's] admitted activities of daily living were noticeably more limited at the psychological evaluation than he had reported the same month at a consultative physical exam." Tr. at 29. ALJs are permitted to discredit a plaintiff's symptoms when evidence contradicts a plaintiff's testimony or if a plaintiff's responses in a medical exam are inconsistent. *See e.g. Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188 (3d Cir. 2007) (finding significant a plaintiff's testimony about her daily activities was internally inconsistent, thus supporting the ALJ's determination of according her

testimony little weight); *Hamm v. Colvin*, 2016 WL 6246837 at *10 (M.D. Pa. 2016), *report and recommendation adopted*, 2016 WL 6216147 (M.D. Pa. 2016) (affirming rationale of ALJ highlighting the inconsistency between plaintiff's report of diabetes symptoms to her providers and plaintiff's testimony regarding diabetes symptoms as a proper reason to discount Plaintiff's testimony). Thus, the ALJ's findings fell well within his discretion.

## IV. Conclusion

For the reasons set forth above, the Court will **AFFIRM** the Commissioner's decision and **DENY** the Plaintiff's request for relief. A separate order shall follow.

Date: November 18, 2026

***s/ Phillip J. Caraballo***
Phillip J. Caraballo
United States Magistrate Judge